Edward GREGORY, Petitioner,

v.

Donald WYRICK, Warden, Respondent.

No. 82–0713–CV–W–1.

United States District Court,
W.D. Missouri, W.D.

May 26, 1983.

Edward Gregory, pro se.

John Ashcroft, Atty. Gen., State of Mo., Rosalynn Van Heest, Asst. Atty. Gen., Jefferson City, Mo., for respondent.

## MEMORANDUM AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

JOHN W. OLIVER, Senior District Judge.

### I.

Petitioner, Edward Gregory, is in custody of respondent under judgment and sentence imposed after a jury trial in the Circuit Court of Jackson County, Missouri on July 17, 1980 for the crimes of attempted rape, burglary in the first degree and robbery in the second degree. He is serving consecutive sentences of seven, eight and ten years, respectively. Petitioner, on August 30,

1982, filed *pro se* application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. On February 28, 1983, we granted petitioner leave to amend his petition so that four grounds are now presented, all of which were raised and considered on direct appeal by the Missouri Court of Appeals, Western District in a reported opinion affirming the convictions. 630 S.W.2d 607 (1982). It therefore appears that petitioner has exhausted the remedies available to him in the Missouri Courts and respondent so concedes.

The four grounds presented in this Court are (1) that the trial court's admission of the pretrial and the in-court identifications by the victim deprived petitioner of due process of law in contravention of the Fourteenth Amendment to the United States Constitution in that said identification procedures were so unreliable and impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification; (2) that petitioner was denied due process and a fair trial in contravention of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution in that he was not afforded a full panel of qualified jurors before he was given the opportunity to exercise his peremptory challenge to the jury panel; (3) that petitioner was denied a fair hearing as to his claim in State court that his arrest was illegal and evidence was illegal and in-court identification was improperly admitted at trial; and (4) that petitioner was denied due process right to a fair trial in that he was placed in double jeopardy when he was convicted of both burglary in the first degree and robbery in the second degree.

## II.

Grounds one and three both assert that the victim's identification testimony should have been excluded by the trial court. Both grounds seek to attack petitioner's conviction as improperly based on such testimony. Ground three, however, is based on the theory that the trial court's admission of the identification testimony violated the Fourth Amendment, rather than the due process clause. Because we find and

conclude that this ground of attack is precluded by *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), we discuss ground three first.

## A.

██ Petitioner, in his motion for leave to file an amendment to his petition alleging ground three, stated as follows under the rubric of "facts:"

Facts will show that petitioner was arrested by Kansas City Police who entered into his apartment with guns drawn without a warrant for the alleged charge and conveyed him to the station where placed on a line-up viewed by the alleged victim, whom was unable to make a positive make of assailant until taken from the show-up room and shown a single photo of the petitioner after that allowed to view the line-up a second time to identify the petitioner. It is the petitioner's contentions that based upon the suggestive pretrial procedurals used resulting from his illegal arrest that both pretrial and in-court identification should have been supress, thus the trial court admission denied him a fair trial in contravention to the 4th and 14th Amendment to the United States Constitution.

In petitioner's traverse, filed April 15, 1983, petitioner contended that "due to his illegal arrest that evidence as to pretrial and in court identification was impermissibly and improperly admitted at trial." In the argument section of that traverse, petitioner outlined the facts alleged in support of his assertion "that he was denied a fair trial by the admission of evidence of pretrial evidence of arrest and line-up identification which were inadmissible under the 'fruit of the poisonous tree doctrine' and should have been ruled inadmissible by the trial court." Traverse at p. 6. Thus, it is apparent that the gravamen of ground three is not that petitioner was denied a full and fair hearing in connection with his Fourth Amendment claim, but rather than the trial court erred in not suppressing the allegedly tainted evidence.

But even if the claim were otherwise, this would not change the posture in which ground three is presented in this Court. For *Stone v. Powell*, 428 U.S. 465, 494, 96 S.Ct. 3037, 3052, 49 L.Ed.2d 1067 (1976), held that "where the State has provided an *opportunity* for a full and fair litigation of a Fourth Amendment claim,[36] a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.[37]"

Footnote 36 of *Stone v. Powell* invited comparison with *Townsend v. Sain*, 372 U.S. 293, 312, 83 S.Ct. 745, 756, 9 L.Ed.2d 770 (1963), where the relevant inquiry was into whether a full and fair evidentiary hearing was *held* in State court. Footnote 37 recapitulated the Court's holding, "that a federal court need not apply the exclusionary rule on habeas review of a Fourth Amendment claim absent a showing that the state prisoner was denied an *opportunity* for a full and fair litigation of that claim at trial and on direct appeal." Thus, a recent Eighth Circuit case, *Lenza v. Wyrick*, 665 F.2d 804, 808 (1981), held that "[i]t is the existence of state processes allowing an *opportunity* for full and fair litigation of fourth amendment claims, rather than defendant's *use* of those processes, that bars federal habeas corpus consideration of claims under *Stone*. E.g., *Caver v. Alabama*, 577 F.2d 1188 (5th Cir.1978)." (emphasis added).

Respondent, rather than citing *Stone*, instead contended that procedural default had occurred because "the motion to suppress found in the legal file at 6–7 did not contain this [Fourth Amendment] allegation, nor did petitioner's motion for a new trial, found in the legal file at 36 through 38." *See* Supplemental Response To Order To Show Cause, at 2. Therefore, respondent contended, petitioner must show "cause" and "prejudice" for the default under *Wainright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) and *Engle v. Issac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). This argument is untenable under *Euell v. Wyrick*, 675 F.2d 1007 (8th Cir.1982). The trial court permit-

ted petitioner's oral amendment of his written motion to suppress and thereafter reached the merits of the issue, tr. at 4–6, 102–103, as did the Missouri Court of Appeals. 630 S.W.2d at 608. We therefore do not premise our treatment of ground three on any procedural default.

We assume, for purposes of decision, that in denying petitioner's motion to suppress, tr. at 102–3, the trial court did not properly treat defendant's contention based on *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Tr. at 4–6. We further assume, for purposes of decision, that *Payton*, decided April 15, 1980, five days before the suppression hearing took place, is applicable in this case on habeas review. *See United States v. Johnson*, 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982). We assume, too, that the Missouri Court of Appeals erroneously interpreted *United States v. Crews* when it held that: "We need not pause to consider whether defendant's warrantless arrest was invalid, for even if so, that fact does not require the suppression of Townley's later lineup identification as the fruit of the warrantless arrest. *State v. Berry*, 609 S.W.2d 948, 952 (Mo. banc 1980). See also *United States v. Crews*, 445 U.S. 463, 477, 100 S.Ct. 1244, 1253, 63 L.Ed.2d 537 (1980)." *See Crews, supra*, at 470, 472, 473 n. 18 & 19, 477, 100 S.Ct. at 1249, 1250, 1251 n. 18 & 19, 1253 (distinguishing in-court identifications not the product of exploitation of illegal arrest from any other fruit of a Fourth Amendment violation); *Manson v. Brathwaite*, 432 U.S. 98, 113 n. 13, 97 S.Ct. 2243, 2252 n. 13, 53 L.Ed.2d 140 (1977) (citing with approval *State ex rel. Kirby v. Sturges*, 510 F.2d 397, 406 (7th Cir.1975) in regard to the distinction between a warrantless search and a suggestive preindictment identification procedure, which "does not in itself intrude upon a constitutionally protected interest.")

■ Nevertheless, "[t]he *Stone* bar applies despite a state court's error in deciding the merits of a defendant's fourth amendment claim. *E.g., Swicegood v. Alabama*,

577 F.2d 1322 (5th Cir.1978); *see also United States ex rel. Maxey v. Morris,* 591 F.2d 386 (7th Cir.1980), *cert. denied,* 442 U.S. 912, 99 S.Ct. 2828, 61 L.Ed.2d 278 (1979); *Dupont v. Hall,* 555 F.2d 15 (1st Cir.1977)." *See, Lenza v. Wyrick,* supra 665 F.2d at 809, n. 6, where the *Lenza* court expressed its conviction that the search and seizure in that case was unconstitutional.

*Swicegood,* cited with approval in *Lenza,* is particularly instructive here for in *Swicegood,* too, the contention was presented that the lineup identification should have been suppressed by the trial court as fruit of an illegal arrest. Appellant argued (1) that his contention did not receive *full* consideration in that the state courts dealt with the question only "in passing" and "without any reasoned consideration," and (2) that his claim was denied *fair* consideration because the state courts misapplied settled principles of constitutional law. The Fifth Circuit rejected both contentions, reasoning that their acceptance would render *Stone* "meaningless." 577 F.2d, at 1326.

We are under duty to follow and apply *Stone* as interpreted and applied by the Eighth Circuit in *Lenza v. Wyrick, supra.* Under those cases, it cannot be said that petitioner in this case was denied a full and fair opportunity to litigate his Fourth Amendment claim, as petitioner was granted leave to present his claim to the trial court by oral amendment at the suppression hearing, and both the trial court and the appeals court considered the Fourth Amendment claim. For the reasons stated, we find and conclude that ground three does not state a claim upon which habeas corpus relief can be granted.

### B.

Petitioner's ground one contends that the trial court's admission of the pretrial and the in-court identifications of the victim denied him due process of law in that the identification procedures in this case were so unreliable and impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification. *Stone v. Powell, supra,* presents no bar to our consideration of petitioner's due process claim. *See Swicegood v. Alabama,* 577 F.2d, at 1325.

■ In *Smith v. Wyrick,* 558 F.Supp. 600, 602–3 & n. 1 (W.D.Mo.1983), we cited controlling Eighth Circuit precedent which provided that in a section 2254 action a federal court must hold an evidentiary hearing "if relevant facts are in dispute and a fair evidentiary hearing was not granted in the state court." (*Citing Smith v. Wyrick,* 693 F.2d 808, 810 (8th Cir.1982), *aff'g.* 538 F.Supp. 1017 (W.D.Mo.1982)). Petitioner does not contend that he was denied a full and fair State court hearing in connection with ground one. The record shows that petitioner was represented by counsel at the suppression hearing; and respondent has provided the Court with a true and correct copy of the transcript of that hearing, which we find to be fully adequate to rule the question presented in ground one. Accordingly, no evidentiary hearing in federal court is required. *See Bivens v. Wyrick,* 640 F.2d 179, 182 (8th Cir.1981); *United States ex rel. Kirby v. Sturges,* 510 F.2d 397, 401–02 (7th Cir.), *cert. denied,* 421 U.S. 1016, 95 S.Ct. 2424, 44 L.Ed.2d 685 (1975) (per Stevens, Jr.)

The record of the State court proceedings in regard to ground one is as follows: On March 31, 1980, defendant, through counsel, filed his motion to suppress in-court and pretrial identification. An evidentiary hearing was held April 21, 1980. At the close of that hearing, the trial court stated its conclusion as follows:

It's my belief, based on the testimony that I've heard, that most of these matters are matters that should or probably will be submitted to the jury for their consideration.

I think they go to the credibility of the witnesses as opposed to whether or not the testimony is admissible. I don't find anything about Miss Townley's testimony that would indicate that she's anything other than a very positive and unshakeable witness on the subject.

But there has been testimony of other persons who say that she was less than

positive in things that she said either in their presence or to some other person, that would indicate that she wasn't certain, but I think that's for a jury to pass on in determining whether or not her testimony is credible.

Let the record show that both the written motion to suppress the in-court and pretrial identifications is denied. The oral motion is also denied. [Tr. at 102–103]

The Missouri Court of Appeals prefaced its consideration of the questions presented by recitation of the underlying historical facts of the case, which it reliably found as follows:

On September 8, 1980, at approximately 9 o'clock a.m., a black man (later identified as the defendant) came to the door of the residence of 83-year-old Lillian Townley in Kansas City. Pretending to be responding to a home repair call, he presented a card and stated he was from American Home Repair. As Mrs. Townley opened the door to return his card, he forced his way into her house. He stole some money and a television set, and attempted to rape her. He failed in the last-mentioned undertaking to achieve penetration.

Before the criminal left the house, Mrs. Townley managed to escape from the cords with which she had been bound and fled from her basement to a next-door neighbor's house. The neighbor, Mrs. Tonjes, called the police. Detective McKinnie actually arrived in time to see the robber enter a car in front of the Townley house. He noted the license number of the car and got a good view of the man. By the time the man had been identified to McKinnie as the robber, he had driven away.

McKinnie later determined that the car was registered to one Edward Thomas. He located Thomas and discovered that he was not the man he had seen at the car in front of the Townley house. The owner told Detective McKinnie that he had lent his car to the appellant. Appellant was arrested and identified both by Mrs. Townley and by McKinnie as the perpetrator. [630 S.W.2d at 608]

In regard to the alleged suggestiveness of the lineup procedure, the Missouri Court of Appeals stated:

Neither was there any impermissibly suggestive procedure which induced Mrs. Townley's lineup identification of appellant, or her subsequent in-court identification. After appellant's arrest, Mrs. Townley viewed a lineup of four men and listened to their voices. She tentatively and cautiously identified appellant as her assailant. After the lineup, Detective Luther took a Polaroid photograph of appellant by himself. After Mrs. Townley had examined the photograph, she was confirmed in her identification of appellant. It made her "doubly sure" of the identification, she testified. Nothing in the above-described police procedure required the suppression either of the lineup identification or of the in-court identification. It is to be noted that the Polaroid color photograph of the appellant was made and shown to Mrs. Townley only after she had tentatively identified him. It is regrettable that she had been informed by the police before she viewed the lineup that "they had the right man this time" (an earlier suspect, the registered owner of the car used by the criminal, had proved not to be the culprit), but it is implicit in the lineup procedure that among the persons in the lineup is one who is suspected by the police as the perpetrator of the crime. *State v. Dayton,* 535 S.W.2d 479, 488 (Mo.App.1976). However, that did not require the trial court to suppress the pre-trial identification, and the trial court's denial of the motion to suppress will not be disturbed on this appeal. The trial court concluded, by the criterion suggested by *Simmons v. U.S.,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968), that there was no "substantial likelihood of irreparable misidentification." Of course, all the facts which tended to weaken Mrs. Townley's identification could have been, and were, brought out in her cross-examination before the jury, so that the jury could eval-

uate her identification. [630 S.W.2d at 608–09]

As to the in-court identification, the Missouri Court of Appeals stated:

Aside from the pre-trial lineup identification, Mrs. Townley had a sufficient opportunity to observe her assailant at close range at the time of the offense, and thus had an independent basis for her in-court identification. *Neil v. Biggers,* 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972); *State v. Higgins,* 592 S.W.2d 151, 160 (Mo. banc 1979), appeal dismissed 446 U.S. 902, 100 S.Ct. 1825, 64 L.Ed.2d 254 (1980). [630 S.W.2d at 609]

█ Our consideration of petitioner's ground one, like our consideration of ground three, is constrained within narrow bounds; for on habeas review we must presume correct "a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the state or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia . . . ." 28 U.S.C. § 2254(d). This presumption of correctness attaches to the factual findings of a state appellate court. *See Sumner v. Mata,* 449 U.S. 539, 545–46, 101 S.Ct. 764, 768, 66 L.Ed.2d 722 (1981); *Johnson v. Wyrick,* 653 F.2d 1234, 1237 (8th Cir.1981), *cert. denied,* 454 U.S. 1149, 102 S.Ct. 1013, 71 L.Ed.2d 302. Section 2254(d) also governs what inferences may properly be drawn regarding the historical facts as reliably found by the state court. *Marshall v. Lonberger,* —— U.S. ——, —————, 103 S.Ct. 843, 848–850, 74 L.Ed.2d 646 (1983); *Sumner v. Mata,* 455 U.S. 591, 597 & n. 10, 102 S.Ct. 1303, 1307 & n. 10, 71 L.Ed.2d 480 (1982) *(Sumner II).*

█ The Missouri Court of Appeals found that after Mrs. Townley had "tentatively and cautiously" identified petitioner as her assailant from the line-up, Detective Luther showed her an isolated Polaroid color photograph of petitioner, taken after the line-up, which caused her to "confirm" her identification of petitioner. The Court of Appeals found it "regrettable" that the police had called Mrs. Townley before the lineup to inform her "they had the right man this time." We note that Mrs. Townley, whose testimony was credited by the trial court, testified at the suppression hearing, tr. at 58–59, that after she had viewed and confirmed her identification of petitioner from the single Polaroid photograph, Detective Luther informed her that Detective McKinnie, the officer who had been called to the scene of the crime, had also identified petitioner. That fact was not mentioned by the Missouri Court of Appeals.

A strong argument could be made that the confrontation procedures employed in this case were unnecessarily suggestive. It is, as the Missouri Court of Appeals stated, implicit in any line-up proceeding that a suspect is among the array; but in this case the police suggested to Mrs. Townley not merely that they had a suspect in custody, but that this time they had the *right* suspect in custody. *Cf. Harris v. United States,* 644 F.2d 710, 712 & n. 3 (8th Cir. 1981) (police summoned victim to the station with the words, "we got the man that robbed you.")

The Missouri Court of Appeals specifically found that Mrs. Townley's lineup identification was "tentative." That finding is fully supported by the record. For Detective Luther to have shown Mrs. Townley an isolated photograph of petitioner directly after she had made her initial, tentative lineup identification may well have induced her to repeat her tentative, lineup identification from the isolated photograph. *See Foster v. California,* 394 U.S. 440, 442, 89 S.Ct. 1127, 1128, 22 L.Ed.2d 402 (1969). At the time Detective Luther photographed petitioner, he also photographed the lineup from which petitioner was identified (Tr. at 65–66); but we note that he did not show that photograph to Mrs. Townley. Tr. at 69. Finally, Detective Luther informed Mrs. Townley, directly after she had identified petitioner from the photograph, that Detective McKinnie had also identified petitioner, thus confirming that she had selected the right man. Taken together, such

confrontation procedures could have banished any doubts from Mrs. Townley's mind and established in their stead a false sense of security in the accuracy of her initial, tentative lineup identification. The record, moreover, is barren of any evidence of necessity for any suggestive procedures in this case. *Compare Stovall v. Denno, supra.*

■ But it is settled that suggestive procedures, without more, do not require a holding that the Due Process Clause of the Fourteenth Amendment has been violated. *Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977); *Neil v. Biggers,* 409 U.S. 188, 198, 93 S.Ct. 375, 381, 34 L.Ed.2d 401 (1972); *United States v. Hardesty,* 706 F.2d 859, 860 (8th Cir.1983); *United States v. Manko,* 694 F.2d 1125, 1127–28 (8th Cir.1982); *United States v. Woody,* 690 F.2d 678, 680 (8th Cir.) *cert. denied,* —— U.S. ——, 103 S.Ct. 830, 74 L.Ed.2d 1024 (1982); *United States v. Hadley,* 671 F.2d 1112, 1115 (8th Cir.1982); *United States v. Mefford,* 658 F.2d 588, 590 (8th Cir.1981), *cert. denied,* 455 U.S. 1003, 102 S.Ct. 1636, 71 L.Ed.2d 870 (1982); *United States v. Bangert,* 645 F.2d 1297, 1303–04 (8th Cir.), *cert. denied,* 454 U.S. 860, 102 S.Ct. 314, 70 L.Ed.2d 158 (1981); *Harris v. Wyrick,* 644 F.2d 710, 712 (8th Cir.1981); *United States v. Alden,* 576 F.2d 772, 778 (8th Cir.1978), *cert. denied,* 439 U.S. 855, 99 S.Ct. 167, 58 L.Ed.2d 161 (1978). In this case, the Missouri courts' ultimate conclusion, that under the criterion stated in *Simmons* there was no "substantial likelihood of irreparable misidentification," is amply supported by the record. Employing the applicable *Biggers* factors, *Manson, supra,* 432 U.S. at 114, 97 S.Ct. at 2253; and *Biggers, supra,* 409 U.S. at 199–200, 93 S.Ct. at 382, the Missouri courts could find that sufficient indicia of reliability were present in this case to outweigh the corrupting effect of the suggestive pretrial confrontation procedures. The Missouri Court of Appeals specifically found that Mrs. Townley had sufficient opportunity to observe her assailant at close range at the time of the offense; there was ample evidence in the record to indicate that Mrs. Townley's degree of attention on the day of the crime

was strong; the Missouri courts could find that Mrs. Townley's description of the suspect, tr. at 49–51, was consistent with her later identification of petitioner, or, in any event, that it was not inconsistent; the record shows that never, after Mrs. Townley had made her initial, tentative identification of petitioner, did she waiver in her conviction that petitioner was the man who had assaulted her; only a single day passed between the crime and Mrs. Townley's pretrial identification.

We cannot find and conclude that any of the eight criteria enumerated in section 2254(d) are present with respect to any of *Biggers* factors or the historical facts underlying them. *Sumner II, supra,* 455 U.S. at 597 & n. 10, 102 S.Ct. at 1307 & n. 10. Under all the circumstances, we find and conclude that petitioner was not denied due process of law by the state trial court's admission of testimony concerning the victim's pretrial or subsequent in-court identification. *See Manson, supra,* 432 U.S. at 110 n. 10, 97 S.Ct. at 2251 n. 10.

### III.

Petitioner's ground two alleges that the trial court erred in denying his motion to disqualify venireperson Dorothy McGee for cause. The relevant colloquy is reported at 630 S.W.2d, at 609. Petitioner's contention is without merit.

■ Petitioner's ground four alleges that petitioner was placed in double jeopardy when he was convicted of both burglary in the first degree, § 569.160, and robbery in the second degree, § 569.030. Respondent again contends that procedural default occurred, but we review this point inasmuch as the Missouri Court of Appeals reviewed it under the "plain error" rule, Rule 29.-12(b).

We find this ground to be without merit. The two statutory provisions do not proscribe the "same offense," *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Each offense requires proof of an element not found in the other. *See, e.g., State v. Powell,* 357 S.W.2d 914,

917 (Mo.1962). Petitioner's contention that robbery in the second degree is included within burglary in the first degree under §§ 556.041 and 556.046, obviously was rejected by the Missouri Court of Appeals and we accept that state construction of a state statute. *Missouri v. Hunter,* —— U.S. ——, ——, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983). No constitutional right is implicated because "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." —— U.S. at ——, 103 S.Ct. at 678.

### IV.

For the reasons stated, it is

ORDERED that petitioner's petition for writ of habeas corpus should be, and the same is hereby, denied.